IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JENNIFER SUSAN CRANFORD,          )
                                  )
        Plaintiff,                )
                                  )
        v.                        )        1:05CV00062
                                  )
SHERIFF TONY G. FRICK,            )
individually and in his           )
official capacity,                )
STANLY COUNTY,                    )
FIDELITY AND DEPOSIT COMPANY      )
OF MARYLAND,                      )
JEFFERY W. BRAFFORD,              )
individually and in his           )
official capacity,                )
DENNIS RICKARD,                   )
individually and in his           )
official capacity,                )
                                  )
        Defendants.               )

<u>MEMORANDUM OPINION and ORDER</u>

OSTEEN, District Judge

        Plaintiff Jennifer Susan Cranford filed this action against

Sheriff Tony G. Frick (individually and in his official

capacity), Stanly County, Fidelity and Deposit Company of

Maryland ("Fidelity"), Jeffery W. Brafford (individually and in

his official capacity), and Dennis Rickard (individually and in

his official capacity) (collectively, "Defendants") alleging a

violation of state and federal constitutional rights and civil

rights, battery, assault, slander per se, slander per quod, false

imprisonment, intentional infliction of emotional distress,

negligent infliction of emotional distress, and trespass.
Pending before this court is Defendants' Motion to Dismiss the
following claims: (1) all official capacity federal claims, (2)
all individual capacity claims against Sheriff Frick, (3) all
claims for violations of the North Carolina Constitution, (4) all
claims for slander, (5) all claims against Stanly County, and (6)
all claims against Defendant Fidelity.[1]

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was previously employed as an officer with the
Stanly County Sheriff's Department. On or about January 21,
2004, at 6:00 a.m., Plaintiff returned to her home after
completing her shift. Later that morning, Captain Jeffery
Brafford and Sergeant Dennis Rickard (collectively, "the
officers") arrived at Plaintiff's house to give her notice of the
Department's decision to terminate her employment. By the time
the officers arrived at the house, however, she was asleep.
Deputy Marcus Clack, a close friend of Plaintiff, arrived at
Plaintiff's house at approximately the same time as the two
officers. Mr. Clack had just returned from the Sheriff's

---

[1] Defendants' motion to dismiss, therefore, does not involve
the following claims: (1) the individual capacity claims against
Brafford and Rickard under federal law, (2) the official capacity
claims under state law not pertaining to slander or violations of
the North Carolina Constitution, and (3) the individual capacity
claims against Brafford and Rickard under state law not
pertaining to slander or violations of the North Carolina
Constitution.

2

Department after being informed of his termination. Upon realizing the reason for the officers' visit, Mr. Clack entered Plaintiff's residence and instructed the officers to wait outside.

Mr. Clack woke Plaintiff and informed her of the surrounding circumstances. Plaintiff, dressed only in her sleeping attire, began pacing about after learning the news. Then, without invitation, a warrant, or probable cause, Capt. Brafford and Sgt. Rickard entered Plaintiff's house in order to seize the equipment issued to Plaintiff through the Sheriff's Office for the performance of her duties.[2] Despite demands by both Plaintiff and Mr. Clack, the two officers refused to leave. Instead, they demanded the equipment and denied Plaintiff's request to return it at a later time.

The officers began to seize items from Plaintiff's house, including a hunting shotgun that belonged to Plaintiff. In reaction, Plaintiff told the officers they had no right to take her personal property. Amidst the ensuing kerfuffle, Sgt. Rickard threw Plaintiff to the floor and handcuffed her behind her back. The officers then began to search the house for County property. According to Plaintiff, the officers did not allow her to change clothes or go to the bathroom. Instead, they reacted

---

[2] This included items such as a service weapon, utility belt, and a vehicle.

3

to Plaintiff's repeated requests to use the bathroom by saying
"'let her wet herself,' or words to that effect." (Defs.' Mem.
Supp. Mot. Dismiss at 5.) Additionally, Plaintiff claims that
the officers taunted her, saying that she was crazy and crying
too much.

At one point during their search, the officers contacted the
Sheriff's Office for further instructions. They were allegedly
told by the Sheriff to call the Albemarle Police to have
Plaintiff committed, presumably in order to cover up their
illegal behavior by discrediting any future statement Plaintiff
would make. In accordance with the Sheriff's instructions, Capt.
Brafford contacted the Albemarle Police via a 911 call in order
to have Plaintiff committed. The police department dispatched
Officer Eddins to Plaintiff's residence, where he met with the
officers. At this point, Capt. Brafford told Officer Eddins that
Plaintiff needed to be committed. In response to Capt.
Brafford's suggestion, Officer Eddins called his supervisor,
Captain Laine, to come to Plaintiff's residence.

Capt. Laine arrived and saw Plaintiff handcuffed on the
floor crying and requesting to go to the bathroom. He directed
the officers to allow Plaintiff to go to the bathroom. Though
they allowed her to go to the bathroom, they refused to uncuff
her. Instead, Plaintiff was forced to use the bathroom in the
presence of Mr. Clack. Eventually at the behest of Capt. Laine,

4

Plaintiff was uncuffed and allowed to remain in her home.  As a result of this incident, Plaintiff suffered both physical and emotional injuries.

## II. **LEGAL STANDARD**

Defendants submitted a Federal Rule of Civil Procedure Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.  When analyzing a Rule 12(b)(6) motion, a court is not to decide if a plaintiff will ultimately prevail, but, rather, the court must assess whether plaintiff should even be allowed to present evidence of his claim.  Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989).

The pleading setting forth the claim must be "liberally construed" in the light most favorable to the nonmoving party and allegations made therein are taken as true.  Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S. Ct. 1843, 1849 (1969).  A court should not grant the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957).  A plaintiff need not plead detailed evidentiary facts, and a complaint is sufficient if it gives a defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  See Bolding v. Holshouser, 575 F.2d 461, 464 (4th Cir. 1978).  However, "the requirement of liberal construction does not mean that the court can ignore a

5

clear failure in the pleadings to allege any facts [that] set forth a claim." <u>Estate of Williams-Moore v. Alliance One Receivables Mgmt., Inc.</u>, 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004).

**III. ANALYSIS**

**A. Official Capacity Federal Claims**

Plaintiff's allegations are sufficient to support at least two theories for an official capacity claim: (1) failure to train and (2) a constitutional violation by a decision maker. Defendants challenge Plaintiff's federal official capacity claim, arguing that Plaintiff failed to allege that an official policy or custom led to the violation of her rights. At issue before the court is whether Plaintiff could prove a set of facts that would entitle her to relief on this claim.

Before beginning an analysis on the federal official capacity claim, it is important to distinguish between individual capacity suits and official capacity suits. A plaintiff bringing an individual capacity claim, proceeds against an individual in order "to impose personal liability upon a government official for actions he takes under color of state law." <u>Kentucky v. Graham</u>, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105 (1985) (citation omitted). An official capacity claim, on the other hand, is a claim against a government entity of which an officer is an agent. <u>Id.</u> (citing <u>Monell v. New York City Dep't of Social</u>

6

<u>Services</u>, 436 U.S. 658, 690, n.55 (1978)).  Therefore,
Plaintiff's official capacity claims in this case are, in
essence, claims against the Stanly County Sheriff's Office and
Stanly County, not the individual named Defendants.[3]

Assuming all facts alleged are true, Plaintiff may not
maintain an official capacity claim seeking to hold Stanly County
liable for the actions of Sheriff Frick, Capt. Brafford, and Sgt.
Rickard.  A county's potential liability exists only "for acts
for which the county has final policymaking authority."  <u>Little</u>
<u>v. Smith</u>, 114 F. Supp. 2d 437, 446 (W.D.N.C. 2000) (citing <u>City</u>
<u>of St. Louis v. Praprotnik</u>, 485 U.S. 112, 108 S. Ct. 915 (1988)).
A determination of a county's final policymaking authority is a
question of state law.  <u>Id.</u> at 446.  Under North Carolina law,
the Office of the Sheriff is "separate and distinct from the
Board of County Commissioners because a sheriff is elected by the
people, not employed by the county."  <u>Id.</u> (citing N.C. Gen. Stat.
§ 162-1 (2000)).  Moreover, "[t]he sheriff, not the county, has
final policymaking authority over the personnel decisions in his
office."  <u>Id.</u> (citing <u>Clark v. Burke County</u>, 117 N.C. App. 85,
89, 450 S.E.2d 747, 749 (N.C. Ct. App. 1994)).[4]  Therefore,

_____

[3] According to the Supreme Court, "a plaintiff seeking to
recover on a damages judgment in an official-capacity suit must
look to the government entity itself."  <u>Graham</u>, 473 U.S. at 165,
105 S. Ct. at 3105.

[4] According to North Carolina's General Statutes, an elected
(continued...)

7

Stanly County, an entity without final policymaking authority over the employees of the Stanly County Sheriff's Office, cannot be held liable under an official capacity claim for the acts of the office's employees. Though Stanly County cannot be held liable in this case, the Sheriff's Office remains a proper party as a government entity.

In order to pursue an official capacity claim against a governmental entity, a plaintiff must show that the entity, "under color of some official policy, 'causes' an employee to violate another's constitutional rights." Monell, 436 U.S. at 692, 98 S. Ct. at 2036. While the law allows for vicarious liability of a government entity under 42 U.S.C. § 1983, courts will not hastily impose liability "solely on the basis of the existence of an employer-employee relationship with a tortfeasor." Id. Instead, a plaintiff must establish causation between a policy or custom of the government and the actions of the offending government employee. Id.

## 1. Failure to Train

In her amended complaint, Plaintiff states that the failure to train Capt. Brafford and Sgt. Rickard in the proper method of

---

[4](...continued)
sheriff has "the exclusive right to hire, discharge, and supervise the employees in his office." N.C. Gen. Stat. § 153A-103 (2006). This right is exclusively reserved to a sheriff, who "may not delegate to another person the final responsibility for discharging his official duties." N.C. Gen. Stat. § 162-24 (2006).

discharging officers resulted in the unconstitutional application of a government policy. According to the Supreme Court, a governmental entity "can be liable under § 1983 for inadequate training of its employees." City of Canton v. Harris, 489 U.S. 378, 388, 109 S. Ct. 1197, 1240 (1989). In order to establish a prima facie case against a government entity for failure to train an employee, a plaintiff must show that an "employee has not been adequately trained and [a] constitutional wrong has been caused by that failure to train." Id. at 387, 109 S. Ct. at 1204.

Though still a broad standard, the Supreme Court has limited the application of the "failure to train" cause of action. More specifically, the Court stated that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Id. at 388, 109 S. Ct. at 1204. Deliberate indifference can exist in situations where "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious [that] the inadequacy [is] likely to result in the violation of constitutional rights." Id. at 390, 109 S. Ct. at 1205.

In this case, Plaintiff alleges that the failure to train the officers in the proper procedure of discharging an officer and collecting government property resulted in the unlawful

9

taking of her personal property, as well as an unlawful search and seizure. At this stage in the litigation, Plaintiff is not required to show that the evidence is conclusive and that she is entitled to judgment. Instead, she must merely give Defendants notice of her claims and the grounds upon which they rest, as well as provide facts that, if proven, would support her claims. The facts Plaintiff alleges are exactly the type required in a failure to train claim—that inadequately trained employees committed a constitutional wrong because they were not properly instructed. Additionally, her allegations that the Sheriff condoned the officers' behavior suggests that he was deliberately indifferent to the officers' action, or that he acquiesced in their constitutionally offensive conduct. Therefore, Defendants' motion will be denied as to this claim.

## 2. Direct Constitutional Violation by a Decision Maker

Plaintiff also claims that the Sheriff's Office is liable under § 1983 because Sheriff Frick, an authorized decision maker, intentionally deprived her of a federally protected right. Liability under § 1983 "may be imposed for a single decision by municipal policymakers under appropriate circumstances . . . because even a single decision by such a body constitutes an act of official government policy." Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 106 S. Ct. 1292, 1298 (1986). This does not mean, however, that "every decision by municipal officers

10

automatically subjects the municipality to § 1983 liability."
Id. at 481, 106 S. Ct. at 1299.  Instead, liability attaches only
when the official is "responsible for establishing final
governmental policy respecting such activity."  Id. at 483, 106
S. Ct. at 1300.  The determination of "whether an official had
final policymaking authority is a question of state law."  Id.

In this case, the parties admittedly agree that North
Carolina law designates the sheriff as the final policymaking
authority for the Sheriff's Office.  See N.C. Gen. Stat. § 153A-
103 and § 162-24 (2006).  Defendants contend, however, that
Plaintiff's claim fails because she alleged that "either the
Sheriff or persons to whom he had delegated policymaking
authority" sanctioned an unlawful search and seizure rather than
unequivocally alleging that Sheriff Frick directed the officers'
conduct.  (First Am. Compl. ¶¶ 74-77.)  This court is unable to
find any authority supporting Defendants' argument that the lack
of an exclusive allegation against a final policymaker is fatal
to an official capacity claim under a Rule 12(b)(6) analysis.  In
fact, Defendants' contention offends modern jurisprudence, which
requires nothing more than "a short and plain statement of the
claim showing that the pleader is entitled to relief."  Fed. R.
Civ. P. 8(a)(2).  Plaintiff satisfactorily alleged that the
Sheriff directed the officers' conduct.  The fact that Plaintiff
claims the order came from the Sheriff either directly or through

11

his delegate does not weaken her allegation.  Accordingly, Defendants' motion will be denied as to this claim.

**B. The Individual Capacity Claims Against Sheriff Frick**

In addition to the official capacity claims brought against Sheriff Frick, Plaintiff also seeks recovery against the Sheriff in his individual capacity under both federal and state law.

**1. Federal Law Individual Capacity Claim**

Defendants maintain that the court should dismiss Plaintiff's federal law claim because Plaintiff failed to allege facts leading to the conclusion that the Sheriff was deliberately indifferent to the officers' conduct.  In order to establish personal liability in a § 1983 action against a supervisor, "the plaintiff must show that the official, acting under color of state law, caused the deprivation of a federal right."  <u>Clay v. Conlee</u>, 815 F.2d 1164, 1170 (8th Cir. 1987) (citation omitted). The general test used to establish this consists of three different elements:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

12

<u>Shaw v. Stroud</u>, 13 F.3d 791, 799 (4th Cir. 1994) (citations and internal quotations omitted). When making a failure to train claim, a plaintiff must establish a supervisor's deliberate indifference to his subordinates' need for training. <u>See</u> <u>City of Canton</u>, 489 U.S. at 388, 109 S. Ct. at 1204. If the basis of a complaint involves an accusation that a supervisor participated in the wrongful conduct, however, a plaintiff may claim that the supervisor was personally involved in that conduct and liable for either tacitly authorizing the conduct or through the supervisor's own affirmative misconduct. <u>See</u> <u>Randall v. Prince George's County</u>, 302 F.3d 188, 202 (4th Cir. 2002) ("As a general matter, a law officer may incur § 1983 liability only through affirmative misconduct."), <u>Jones v. Chicago</u>, 856 F.2d 985, 992 (7th Cir. 1988); cf. <u>Layman v. Alexander</u>, 294 F. Supp. 2d 784, 793 (W.D.N.C. 2003).

Courts have interpreted the "personally involved" standard in a more restrictive manner than the term would suggest. A supervisor is not liable under § 1983 for mere negligence, or even gross negligence in "failing to detect and prevent subordinates' misconduct." <u>Id.</u>, <u>see also</u> <u>Baynard v. Malone</u>, 268 F.3d 228, 236 (4th Cir. 2001), <u>Grayson v. Peed</u>, 195 F.3d 692, 695 (4th Cir. 1999). Instead, a supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see." <u>Jones</u>, 856

13

F.2d at 992.  This type of action is necessary because it is the "supervisor's participation in wrongdoing [that] will trigger liability."  <u>Jasinski v. Adams</u>, 781 F.2d 843, 848 (11th Cir. 1986).

Plaintiff alleges that Sheriff Frick's own conduct of assisting the officers' unconstitutional mistreatment of her forms the basis for his individual liability.  This allegation is a noted exception to the rule that a "supervisor is not liable under section 1983 unless an affirmative link exists between the [constitutional] deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise."  <u>Specht v. Jensen</u>, 832 F.2d 1516, 1524 (10th Cir. 1987) (citation and internal quotations omitted). Such an allegation invokes a theory of direct liability or bystander liability under § 1983 rather than vicarious liability for the actions of employees.  <u>See</u> <u>Morrison v. Washington County</u>, 700 F.2d 678, 686 (11th Cir. 1983) (sheriff faced potential liability regarding his decision to arrest decedent for public drunkenness at a hospital); <u>Nesmith v. Alford</u>, 318 F.2d 110 (5th Cir. 1963); <u>see also</u> <u>Hall v. Shipley</u>, 932 F.2d 1147 (6th Cir. 1991); <u>Davis v. Zahradnick</u>, 600 F.2d 458 (4th Cir. 1979); <u>Nashoba Valley Christian Fellowship, Inc. v. Town of Ayer</u>, 623 F. Supp. 542 (D. Mass. 1985).  Plaintiff's allegation of the Sheriff's affirmative misconduct relieves her from the burden of showing

14

"deliberate indifference," and provides a sufficient basis for an individual liability claim under § 1983.  Randall, 302 F.3d at 202-03, Jasinski, 781 F.2d at 848.  Accordingly, Defendants' motion will be denied with respect to this claim.

## 2. State Law Individual Capacity Claim

Defendants argue that Plaintiff's state law individual capacity claim is also appropriate for dismissal because Plaintiff failed to allege that the Sheriff acted with corruption or malice.  Traditionally, government officers enjoy immunity for negligence in the performance of governmental duties that involve the exercise of judgment or discretion.  Phillips v. Gray, 163 N.C. App. 52, 55, 592 S.E.2d 229, 232 (N.C. Ct. App. 2004) ("Sovereign immunity ordinarily grants the state, its counties, and its public officials, in their official capacity, an unqualified and absolute immunity from law suits.").  This immunity extends to sheriffs and deputy sheriffs.  Id. at 57, 592 S.E.2d at 232; see also Summey v. Barker, 142 N.C. App. 688, 691, 544 S.E.2d 262, 265 (N.C. App. 2001).  This immunity is not absolute, however, as it will not extend to actions of public officials which "may have been corrupt, malicious or perpetrated outside and beyond the scope of official duties."  Phillips, 163 N.C. App. at 57, 592 S.E.2d at 232 (citation and internal quotations omitted); see also Smith v. State of North Carolina, 289 N.C. 303, 331, 222 S.E. 2d 412, 430 (N.C. 1976).

15

Plaintiff's amended complaint sufficiently alleges conduct on behalf of Sheriff Frick that would qualify as corrupt or malicious. In addition to the claims against Sheriff Frick for intentional torts, Plaintiff also claims that the direction from Sheriff Frick to have her committed was a pretext for discrediting her complaints in the future. Such an act necessarily implies a malicious purpose. Additionally, Plaintiff's amended complaint states directly that the Sheriff acted out of malice. (First Am. Compl. ¶ 148.) These factual assertions make out a prima facie case for individual capacity liability that would prevent the Sheriff from invoking sovereign immunity. Therefore, Defendants' motion to dismiss this claim will be denied.

### C. North Carolina Constitutional Claims

In addition to her common law claims, Plaintiff also seeks relief under the North Carolina Constitution. A plaintiff may make a claim for relief under the North Carolina Constitution "only where there is not an adequate remedy provided by state law." Rousselo v. Starling, 128 N.C. App. 439, 441, 495 S.E.2d 725, 727 (N.C. Ct. App. 1998). When the common law provides an adequate remedy, dismissal of a constitutional claim is warranted. Id. In this case, Plaintiff has adequate remedies

16

under the common law.[5]  Accordingly, Plaintiff's claims for
relief under the North Carolina Constitution will be dismissed.

### D. Slander Claims

Plaintiff's amended complaint alleges that Sheriff Frick,
Sgt. Rickard, and Capt. Brafford defamed her under both slander
per se and slander per quod theories.  Defendants contend,
however, that any potentially defamatory remarks made by the
three accused were never communicated to a third party.

### 1. Slander Per Se

At issue before the court is whether Plaintiff's slander
per se claims are viable against the three officers.  In order to
make a prima facie case of slander per se, a plaintiff must
establish three elements: "(1) defendant spoke base or defamatory
words which tended to prejudice him in his reputation, office,
trade, business or means of livelihood or hold him up to
disgrace, ridicule or contempt; (2) the statement was false; and
(3) the statement was published or communicated to and understood
by a third person." West v. King's Dep't Store, Inc., 321 N.C.
698, 703, 365 S.E.2d 621, 624 (N.C. 1988) (citations omitted).
Since Defendants do not attack Plaintiff's slander per se claims
on the first two elements, the court will focus on whether or not
the statements were uttered or communicated to a third party.

---

[5] Plaintiff did not respond to Defendants' argument on this
issue.

17

Plaintiff sufficiently set forth a prima facie case for
slander per se against Sheriff Frick and Capt. Brafford, but not
Sgt. Rickard.  In Plaintiff's complaint, she claims that the
Sheriff communicated a slanderous statement to one or both of the
officers at her residence and that Plaintiff was mentally ill and
should be committed.  Likewise, she alleges that Capt. Brafford
communicated the same or a similar statement to the Albemarle
police.  In both these situations, the statements were
communicated to and understood by a third person, thus fulfilling
the publication requirement.  Plaintiff, however, does fail to
make a prima facie showing against Sgt. Rickard because she does
not establish that he communicated any slanderous statements to a
third party.  Therefore, Defendants' motion will be denied as to
Sheriff Frick and Capt. Brafford and granted as to Sgt. Rickard.

### 2. Slander Per Quod

The court must also address whether Plaintiff's slander per
quod claims can survive a motion to dismiss.  The elements of a
slander per quod claim are nearly identical to that for slander
per se, with the exception that the statement in a per quod
action is not generally defamatory, but rather is only injurious
in light of the surrounding circumstances in which the statement
was made and subsequent consequences that result.  See Johnson v.
Bollinger, 86 N.C. App. 1, 9-10, 356 S.E.2d 378, 384 (N.C. Ct.
App. 1987) (citation omitted).  In a per quod action, when "words

18

are not injurious as a matter of general acceptance, but are only injurious in consequence of extrinsic facts . . . there must be specific allegations and proof of some special damage arising from the utterance." Johnson, 86 N.C. App. at 9-10, 356 S.E.2d at 384 (citation omitted).  Defendants challenge Plaintiff's slander per quod claims on the same grounds as her slander per se claims, as well as on the basis that Plaintiff suffered no injury.  Since the court previously decided that there are sufficient facts to find a communication to a third party, it will only address Defendants' second contention.

Plaintiff alleges that the slanderous remarks made against her concerning her mental capacity resulted in an inability to find further employment as a law enforcement officer. Additionally, Plaintiff states that she suffered emotional distress.  Taking Plaintiff's statements as true, she has demonstrated the special injury necessary for a prima facie showing of slander per quod.  Since the issue of communication in her per quod claim is identical to that of her per se claim, the court will deny Defendants' motion with respect to Sheriff Frick and Capt. Brafford and will grant the motion with respect to Sgt. Rickard.

### E. Claims Against Stanly County

As mentioned earlier, Stanly County is not an appropriate party to this action.  Though Plaintiff claims that there is a

19

potential basis for holding Stanly County liable for the Sheriff Department's handling of county property, Plaintiff makes no showing that the policy of reclaiming such property is unconstitutional. Instead, Plaintiff claims that the execution of the policy in this circumstance was unconstitutional. Such a claim challenges the Sheriff's conduct, training, and supervision of deputies—a policymaking responsibility reserved specifically for the Sheriff according to North Carolina law. See N.C. Gen. Stat. § 153A-103. Accordingly, the court will grant Defendants' motion to dismiss as to Stanly County on all charges.

**F. Claims Against Fidelity and Deposit Company of Maryland**

Plaintiff's claim against Fidelity should also be dismissed. Fidelity serves as the Sheriff Department's surety and is liable only to the extent that the Stanly County Sheriff's Office is liable. Accordingly, Plaintiff would only be justified in making a claim against Fidelity should the Sheriff's Office fail to meet an obligation that has not been determined in this case. Therefore, the court will grant Defendants' motion to dismiss all claims against Fidelity.

**IV. CONCLUSION**

For the reasons set forth above,

Defendants' Motion to Dismiss [22] is **GRANTED** as to the slander claims against Sgt. Rickard, all claims against Fidelity and Deposit Company of Maryland and Stanly County, and

20

Plaintiff's claims under the North Carolina Constitution. Plaintiff's official capacity claims against Sheriff Frick, Capt. Brafford, and Sgt. Rickard are converted into a claim against the Stanly County Sheriff's Office.

Defendants' Motion to Dismiss [22] is **DENIED** as to the federal and state law individual capacity claims against Sheriff Frick, the slander claims against Sheriff Frick and Capt. Brafford, and the official capacity claim against the Sheriff's Office.

Plaintiff's claims that went unchallenged in Defendants' motion also remain. These claims consist of: (1) the individual capacity claims against Capt. Brafford and Sgt. Rickard under federal law, (2) the official capacity claims under state law not pertaining to slander or violations of the North Carolina Constitution, and (3) the individual capacity claims against Capt. Brafford and Sgt. Rickard under state law not pertaining to slander or violations of the North Carolina Constitution.

This the 28th day of February 2007.

United States District Judge